U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED - SHREVEPORT

FEB 22 2013

TONY R. MOORE, CLERK
BY_____ DEPUTY

# UNITED STATES DISTRICT COURT

## FOR THE WESTERN DISTRICT OF LOUISIANA

## SHREVEPORT DIVISION

ISAAC JORDAN

CIVIL ACTION NO. 11-1701

versus

JUDGE TOM STAGG

CLECO CORPORATION

## MEMORANDUM RULING

Before the court is the second motion for summary judgment filed by the defendant, Cleco Corporation ("Cleco"), seeking dismissal of all remaining claims alleged by the plaintiff, Isaac Jordan ("Jordan").  See Record Document 119.  Based on the following, Cleco's second motion for summary judgment is **GRANTED**.

## I.  BACKGROUND[1]

Jordan, along with twelve other current and former African-American employees of Cleco, brought an action against Cleco, alleging, inter alia, race discrimination and retaliation pursuant to Title VII of the Civil Rights Act of 1964, Section 1981 of the United States Code, the Louisiana Employment Discrimination Law, and the Louisiana Commission on Human Rights.  See Record Documents 1,

---

[1]Much of the background is adopted from the court's previous summary judgment ruling.  See Record Document 113.

5 and 25. The court ruled on Cleco's first motions for summary judgment as to the plaintiffs, and the remaining causes of action were severed. See Record Document 115. Regarding the first motion for summary judgment as to the claims of Jordan, the court dismissed his Title VII claims, state law claims, and Age Discrimination in Employment Act ("ADEA") claims. See Record Document 114. The court now addresses Jordan's remaining claims of failure to promote, discrimination, retaliation, and hostile work environment brought pursuant to 42 U.S.C. § 1981.

## II. ANALYSIS

### A.   Summary Judgment Standard.

Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[2] Quality Infusion Care, Inc. v. Health Care Serv. Corp., 628 F.3d 725, 728 (5th Cir. 2010). "Rule 56[(a)] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Patrick v. Ridge, 394 F.3d 311, 315 (5th Cir. 2004). If the movant

---

[2]The court notes that amended Rule 56 requires that there be "no genuine **dispute** as to any material fact," but this change does not alter the court's analysis. Fed. R. Civ. P. 56(a) and advisory committee's note (emphasis added).

demonstrates the absence of a genuine dispute of material fact, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine [dispute] for trial." Gen. Universal Sys., Inc. v. Lee, 379 F.3d 131, 141 (5th Cir. 2004). Where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, then summary judgment should be granted. See Boudreaux v. Swift Transp. Co., 402 F.3d 536, 540 (5th Cir. 2005). The Fifth Circuit has cautioned that "conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy" the nonmovant's burden in a motion for summary judgment. Ramsey v. Henderson, 286 F.3d 264, 269 (5th Cir. 2002).

## B.    Failure To Promote.

Jordan claims that Cleco failed to promote him to five Lead Fuel Handler positions and to the position of Supervisor - Field Maintenance - Balance of Plant ("BOP") because of his race. Cleco asserts that these claims have prescribed. In his opposition to Cleco's second motion for summary judgment, Jordan appears to bring his failure to promote claims under his hostile work environment claim instead of bringing them individually. He then proceeds to argue that these claims are timely because of the continuing violation doctrine. However Jordan intends to bring his failure to promote claims, the court will proceed to address these claims individually

3

out of an abundance of caution.

### 1.     Statute Of Limitations.

Section 1981 does not contain a statute of limitations.  See Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369, 371, 124 S. Ct. 1836, 1839 (2004).  When a federal statute does not contain a statute of limitations, courts should apply "the most appropriate or analogous state statute of limitations."  Id.  Under Louisiana law, "[a] section 1981 claim is best characterized as a tort . . . and is, therefore, governed by the one-year prescriptive period for delictual actions dictated by [Louisiana Civil Code article] 3492."  Taylor v. Bunge Corp., 775 F.2d 617, 618 (5th Cir. 1985). However, for actions arising under federal statutes enacted after December 1, 1990, courts must apply a catchall four-year statute of limitations.  See 28 U.S.C. § 1658 ("Except as otherwise provided by law, a civil action arising under an Act of Congress enacted after the date of the enactment of this section may not be commenced later than 4 years after the cause of action accrues.").

Section 1981 was originally enacted as part of the Civil Rights Act of 1866 and covered "only conduct at the initial formation of the contract and conduct which impairs the right to enforce contract obligations through legal process."  Patterson v. McLean Credit Union, 491 U.S. 164, 179, 109 S. Ct. 2363, 2374 (1989).  Section 1981 "did not protect against harassing conduct that occurred after the formation of

the contract." Jones, 541 U.S. at 372, 124 S. Ct. at 1840 (citing Patterson, 491 U.S. 164, 109 S. Ct. 2363). Section 1981 was later amended by the Civil Rights Act of 1991 to create a cause of action for discriminatory and retaliatory conduct occurring after the formation of the contract. See id. Thus, the applicable statute of limitations depends upon whether the claim was actionable under the older version of section 1981 or is only made possible by the 1991 amendments. See id. at 382, 124 S. Ct. at 1845. Where the plaintiff's claim was available under the original section 1981, the court must apply the analogous state statute of limitations, which in Louisiana is one-year. See id. at 371, 124 S. Ct. at 1839; Taylor, 775 F.2d at 618. However, where the claim is only available under section 1981 as amended, the cause of action is said to "arise under" the Civil Rights Act of 1991 and the federal four-year statute of limitations provided by section 1658 applies. See Jones, 541 U.S. at 382, 124 S. Ct. at 1845.

Failure to promote claims were actionable under section 1981, prior to the 1991 amendments, if "the nature of the change in position was such that it involved the opportunity to enter into a new contract with the employer." Patterson, 491 U.S. at 185, 109 S. Ct. at 2377. As the Supreme Court explained in Patterson, "only where the promotion rises to the level of an opportunity for a new and distinct relation between the employee and the employer is such a claim actionable under [section]

5

1981." Id. "In deciding whether a change of position rises to the level of a new and distinct relation, the court must compare the employee's current duties, salary, and benefits with those incident to the new position." Police Assoc. of New Orleans v. City of New Orleans, 100 F.3d 1159, 1170-71 (5th Cir. 1996). If the new position involves "substantial changes," the failure to promote claim was available under section 1981 prior to the 1991 amendments and Louisiana's one-year prescriptive period applies. See id.; see also Fonteneaux v. Shell Oil Co., 289 F. App'x 695, 699 (5th Cir. 2008). Otherwise, the claim is only available under section 1981 as amended and the four-year statute of limitations applies. See id.

The record only indicates one opening for Lead Fuel Handler, and that position was filled on January 19, 2002. See Record Document 119, Ex. B at ¶ 7. Jordan states in his deposition that he thinks the position was filled in 2004 or 2005 but appears to be unsure of the exact year. See id., Ex. A at 24-25. Jordan filed his complaint on December 11, 2009, more than four years after this position was filled. Regardless of whether the four-year or one-year statute of limitations applies, Jordan's failure to promote claim for the Lead Fuel Handler position is untimely.[3]

---

[3]In his declaration, Jordan asserts that he was denied promotions to five Lead Fuel Handler positions in 2002; however, he does not directly address these claims in his memorandum in opposition. See Record Document 127, Declaration of Isaac Jordan at ¶ 13. To the extent Jordan is asserting these claims in his opposition to Cleco's motion for summary judgment, these claims have prescribed under the four-year statute of limitations.

Regarding the Supervisor of Field Maintenance position, Cleco argues that a promotion to that position from a Fuel Handler position would have resulted in substantial changes to Jordan's employment at Cleco. To support its argument, Cleco delineates the specific duties and responsibilities of each position. The Supervisor position oversaw the entire Field Maintenance department, including all of the Material Handlers and Lead Material Handlers. The position was also responsible for supervising the equipment maintenance activities of the coal handling area. The Supervisor earned an annual salary between $65,310 and $104,497. In contrast, Jordan's responsibilities as Fuel Handler included supplying coal to the plant, running heavy equipment, and maintaining repairs on coal handling equipment. See id., Ex. A at 7,8. The Fuel Handler position earned an hourly wage, and Jordan earned approximately $47,611 in 2006. See id., Ex. B at ¶ 5, 8.

Jordan simply denies there was a substantial change in responsibilities between the Supervisor of Field Maintenance and the Fuel Handler position and states that "[b]oth positions called same set of skill [sic]; scheduling, orderings materials and supplies and managing staff." See Record Document 127, Statement of Material Facts at ¶ 11. He further states that there was not a significant difference in the positions' salaries but does so in a conclusory fashion by not contesting the underlying facts concerning the positions' salaries. Jordan cites generally to his

7

declaration in support; however, his declaration does not adequately support any of his allegations.

The court finds Cleco's argument to be the more convincing one. A promotion from Fuel Handler to Supervisor of Field Maintenance would have resulted in a substantial change to Jordan's job responsibilities and compensation. As a result, his failure to promote claims arise under section 1981 prior to the 1991 Amendment, and therefore, Louisiana's one-year prescriptive period applies. Cleco filled the position on July 1, 2006, which is more than three years before Jordan filed his claim on December 11, 2009. <u>See</u> Record Document 119, Ex. B at ¶ 12. Accordingly, Jordan's claim is untimely.

## 2. Merits Of 2006 Failure To Promote Claim.

Assuming, <u>arguendo</u>, that Jordan had brought his 2006 failure to promote claim in a timely manner, his claim would still fail on the merits. "An employee can prove discrimination through direct or circumstantial evidence."[4] <u>Jones v. Robinson Prop. Grp., L.P.</u>, 427 F.3d 987, 992 (5th Cir. 2005). For cases of discrimination based on circumstantial evidence, the court applies the <u>McDonnell Douglas</u> burden-shifting

---

[4]Jordan's failure to promote claim brought pursuant to section 1981 is analyzed under the same standards as a Title VII claim. <u>See</u> <u>Decorte v. Jordan</u>, 497 F.3d 433, 437 (5th Cir. 2007).

8

analysis.[5]  See Davis v. Dallas Area Rapid Transit, 383 F.3d 309, 316-17 (5th Cir.

2004) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S. Ct. 1817,

1824 (1973)).

> To survive summary judgment under McDonnell Douglas,
> the plaintiff must first present evidence of a prima facie
> case of discrimination. If the plaintiff presents a prima
> facie case, discrimination is presumed, and the burden
> shifts to the employer to articulate a legitimate,
> nondiscriminatory reason for the underlying employment
> action.   If the employer is able to state a legitimate
> rationale for its employment action, the inference of
> discrimination disappears and the plaintiff must present
> evidence that the employer's proffered reason was mere
> pretext for racial discrimination.[6]

Davis, 383 F.3d at 317 (citations omitted).

Cleco argues that even if Jordan could establish a prima facie case of

discrimination, his 2006 failure to promote claim fails on the issue of pretext.  As

previously mentioned, if the plaintiff has established a prima facie case of

discrimination, the burden shifts to the employer to state a legitimate,

nondiscriminatory reason for the adverse employment action.   "The employer's

burden is only one of production, not persuasion, and involves no credibility

---

[5]Jordan does not allege that he possesses direct evidence in support of his
2006 failure to promote claim, nor does the court find any in the record.

[6]"[A] plaintiff must present sufficient evidence to find that the employer's
asserted justification is false." Crawford v. Formosa Plastics Corp., 234 F.3d 899,
903 (5th Cir. 2000) (citations and quotations omitted).

assessment." <u>McCoy v. City of Shreveport</u>, 492 F.3d 551, 557 (5th Cir. 2007).

Robert St. Romain ("St. Romain"), the Plant Manager of the Rodemacher facility where Jordan worked, was in charge of filling the Supervisor of Field Maintenance position. <u>See</u> Record Document 119, Exs. A at 38, 39 and B at ¶ 8. Jordan and eight other individuals applied for the position. St. Romain selected Steve Lachney ("Lachney") for the position. Lachney began his employment with Cleco in 1983 as a Utility Worker. He became a Fuel Handler in 1984 and was promoted to Lead Fuel Handler in 1988. <u>See id.</u> St. Romain claims he selected Lachney because of

> his number of years of experience in the Material Handling Department, his previous experience as a Lead Fuel Handler and as a Power Plant Mechanic, his excellent job performance, his outstanding work as a mechanic at the plant, his ability to make decisions based on facts as opposed to knee-jerk decisions, his ability to improve his plant knowledge within a short amount of time, as well as the fact that he is a "self starter" and "quick learner" who got along with most of his coworkers.

<u>Id.</u>, Ex. C at ¶ 3.

Now that Cleco has presented its legitimate, nondiscriminatory reasons for selecting Lachney over Jordan for the Supervisor of Field Maintenance position, the burden shifts to Jordan to demonstrate that these reasons are pretextual. "To carry this burden, the plaintiff must rebut each nondiscriminatory or nonretaliatory reason

articulated by the employer." Id. "A plaintiff may establish pretext 'by showing that a discriminatory motive more likely motivated'" his employer's decision by such evidence as disparate treatment, or that the employer's explanation is unworthy of credence. Wallace v. Methodist Hosp. Sys., 271 F.3d 212, 220 (5th Cir. 2001) (quoting Defenbaugh-Williams v. Wal-Mart Stores, Inc., 156 F.3d 581, 589 (5th Cir. 1998)). When conducting a pretext analysis, the court is not to engage in second-guessing an employer's business decisions. See LeMaire v. La. Dept. Of Transp. & Dev., 480 F.3d 383, 391 (5th Cir. 2007). Anti-discrimination laws do not require an employer to make proper decisions, only nondiscriminatory ones. See id. (citing Little v. Republic Ref. Co., 924 F.2d 93, 97 (5th Cir. 1991)). A showing that Jordan was "clearly better qualified" than those that were selected for the position is sufficient to show pretext. See Moss v. BMC Software, Inc., 610 F.3d 917, 922 (5th Cir. 2010).

Jordan has not presented any tenable evidence that he was clearly better qualified than Lachney or that Cleco's reasons were false, but only states that his qualifications were superior to Lachney and that he had more supervisory experience before working at Cleco. This argument does not demonstrate that he was clearly better qualified than Lachney. He further claims that racial discrimination in Cleco's promotional practices was "done with the full knowledge and blessings" of Human

11

Resources. Record Document 127, Memorandum in Opposition at 5. However, he does not draw a connection between this alleged practice and St. Romain's decision concerning the Supervisor of Field Maintenance position.

Jordan also argues that his Exhibit E demonstrates pretext. Exhibit E contains printed emails regarding individuals who expressed interest in certain promotional opportunities within Cleco. Copies of these emails contain handwritten notes indicating a candidate's race, sex, and age. Jordan asserts that these emails with the handwritten notes indicating a candidate's race were sent to hiring supervisors before promotional decisions were made. This argument is fallacious. Obviously, the handwritten notes would not have been on the emails before they were actually sent. Regardless, Felice Burton ("Burton"), the Employment Coordinator at Cleco, explains the purpose behind the handwritten notes in her declaration. Once a job posting closed, she would draft, sign, and send an email to the hiring supervisors indicating the names of the individuals who applied. See Record Document 119, Ex. D at 2. A copy of that email would then be placed in the job log. After a selection was made, a panel would review information regarding the application process which included, among other things, each candidate's race, sex, and age. Sometimes this information would be typed on a separate sheet of paper and at other times Burton would write the information next to the candidate's name on a copy of the email. See id.

12

Jordan's arguments contain nothing more than conclusory allegations, speculation, and unsubstantiated assertions and are, therefore, insufficient to demonstrate that Cleco's explanations are pretexual.  For these reasons, Jordan has clearly failed to carry his burden at summary judgment concerning his 2006 failure to promote claim.  Accordingly, his claim must be dismissed.

## C.    Miscellaneous Racial Discrimination And Retaliation Claims.

Jordan also claims that Cleco denied him training classes because of his race. He alleges that in early 2002, 2003, or 2004 he discussed taking classes to advance his career at Cleco with his supervisor. Jordan was not given this opportunity. See Record Document 119, Ex. A at 19, 20. He alleges that Caucasian employees were given this opportunity while African-Americans were not.  Since this claim arose more than four years before Jordan filed his complaint, the claim has prescribed under the four-year statute of limitations. Regardless, Jordan cannot establish a prima facie case of discrimination arising out of the denial of the opportunity to take training classes.

To establish his prima facie case under McDonnell Douglas, Jordan must demonstrate that he:

> (1) is a member of a protected group; (2) was qualified for
> the position at issue; (3) was discharged or suffered some
> adverse employment action by the employer; and (4) was

13

> replaced by someone outside his protected group or was
> treated less favorably than other similarly situated
> employees outside the protected group.

McCoy, 492 F.3d at 556.  Adverse employment actions include "only ultimate employment actions such as hiring, granting leave, discharging, promoting, or compensating." Id. at 559 (quoting Green v. Adm'rs of Tulane Educ. Fund, 284 F.3d 642, 657 (5th Cir. 2002)).

Cleco asserts that its decision not to pay for Jordan's training classes was not an ultimate employment action.  Jordan does not address Cleco's argument and only repeats his claim that he was not allowed to take the classes because of his race.  The court agrees with Cleco.  As a result, Jordan has failed to establish a prima facie case for his claim based on the training classes.

Jordan additionally claims that Cleco retaliated against him because he complained about the discrimination in hiring and the racist atmosphere at the Rodemacher facility and because he filed a complaint with the Office of Federal Contract Compliance Programs.  He alleges that, as a result, he was continually passed over for promotion and hazed by his supervisor, Rudy Bordelon ("Bordelon").  He further alleges that immediately after filing his suit in 2009, he was isolated by Cleco management.

To establish a prima facie case of retaliation, a plaintiff must demonstrate that:

14

"1) he participated in an activity protected by Title VII; (2) his employer took an adverse employment action against him; and (3) a causal connection exists between the protected activity and the adverse employment action." McCoy,492 F.3d at 556-57.  An adverse employment action is one that a reasonable employee would have found materially adverse, which means that the action may deter a reasonable employee from engaging in the protected activity. See Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68, 126 S. Ct. 2405, 2415 (2006). "Petty slights, minor annoyances, and simple lack of good manners will not create such a deterrence." Id.

Jordan does not present sufficient evidence to demonstrate that the alleged actions of isolation and hazing amounted to materially adverse employment actions. Conclusory allegations and unsubstantiated assertions are insufficient to satisfy the plaintiff's burden at summary judgment. See Ramsey, 286 F.3d at 269. With regard to the allegations that Cleco retaliated against him by failing to promote him, the court has already stated that those claims are untimely and fail on the issue of pretext. Accordingly, Jordan's retaliation claims must be dismissed.

**D.    Hostile Work Environment.**

In order to establish a hostile working environment claim, Jordan must prove that:

> (1) [he] belongs to a protected group; (2) [he] was

subjected to unwelcome harassment; (3) the harassment complained of was based on race; (4) the harassment complained of affected a term, condition, or privilege of employment; (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action. For harassment on the basis of race to affect a term, condition, or privilege of employment, as required to support a hostile work environment claim under Title VII, it must be sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.

In determining whether a workplace constitutes a hostile work environment, courts must consider the following circumstances: the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.

Ramsey, 286 F.3d at 268 (quotations and citations omitted). "[S]imple teasing, . . . offhand comments, and isolated incidents will not amount to discriminatory changes in the 'terms and conditions of employment.'" Faragher v. City of Boca Raton, 524 U.S. 775, 788, 118 S. Ct. 2275, 2283 (1998). "The plaintiff bears the burden of showing that his employer failed to take effective action." Skidmore v. Precision Printing & Packaging, Inc., 188 F.3d 606, 616 (5 th Cir. 1999).

Jordan asserts that the following allegations support his claim of hostile work environment: (1) in 2004 and again in 2005, Bordelon allegedly stated that African-American men do not have oral sex with African-American women because

16

it would be like eating a Brillo soap pad; (2) Bordelon allegedly stated on multiple occasions that African-Americans are not to be trusted, are lazy, and will lie and steal and allegedly referred to African-Americans as "boys"; (3) African-Americans were subject to a different set of standards and rules; (4) in 2006, while at a crawfish boil, St. Romain allegedly stated to another African-American coworker who was eating crawfish: "I didn't even know you people ate that kind of stuff;" (5) in 2007, while riding in the back seat of a golf cart with two Caucasian coworkers, one of the coworkers stated to him: "It is not 1950 . . . You could ride in the front;" (6) a noose was discovered in a plant facility by a coworker in 2006; (7) in 2008, Terry Halford allegedly commented that African-Americans "can't make a pure white baby;" and (8) Bordelon allegedly harassed Jordan on a continuous basis. Jordan asserts that his failure to promote allegations and denial of training classes support his hostile work environment claim as well.

Jordan's hostile work environment claim fails on several grounds. First, the court has already dismissed his failure to promote and denial of training classes claims as untimely and meritless. Second, in several of Jordan's allegations, he was not subjected to the alleged conduct, i.e., the statement at the crawfish boil. Regarding the noose, Jordan has not presented admissible evidence that the noose was directed at him or was used to intimidate him. He alleges that Robbie Bridges

17

reported the noose to Bordelon and Bordelon replied: "That's them guys trying to scare Isaac."  Record Document 119, Ex. A at 63.  Jordan was not present at this exchange and states that this information was relayed to him later by Robbie Bridges. Moreover, according to Jordan's deposition, the noose was dismantled and thrown away after Robbie Bridges reported the incident.  <u>See</u> Record Document 119, Ex. A at 63.  Other allegations, such as Bordelon's continuous harassment, without specific examples thereof, are conclusory and will not be considered by the court.  As for the remaining allegations, while offensive, the court does not find that they rise to a severe or pervasive level required for a hostile environment claim.  Accordingly, Jordan's hostile work environment claim must be dismissed.

### III.  CONCLUSION

Based on the foregoing analysis, Cleco's second motion for summary judgment (Record Document 119) is **GRANTED**.  The court finds there is no genuine dispute as to any material fact with regard to any of Jordan's claims.

A judgment consistent with the terms of this Memorandum Ruling will issue herewith.

**THUS DONE AND SIGNED** at Shreveport, Louisiana, this the 21st day of February, 2013.



JUDGE TOM STAGG

18